Opinion op the Court. ,
Niniaii Edwards, on the 24th of July, 1813, sold to. Azariah Davis, John Gray, Ezekiel Harrison, Jr. and' Jesse Harrison, the undivided third of a military survey, the whole containing 2,365 acres, nominally, or by *341 tlie calls of the title papers, styled the “Rich Grove Sur? vey,” and also, the head-right claims, in the vicinity thereof, in which he or his father was interested, to an amount not exceeding 1600 acres; and oii that day en-’ tered into articles, binding himself to convey the landsj when the purchase money was paid, and the other party bound themselves to pay him four thousand dollars for his interest in the military survey, and two dollars per acre for the head-right lands, located under the-laws of this commonwealth, in three equal annual in-stalments, with interest from the date. And if, upon actual survey, the military tract did not contain 2365 acres, Edwards was to deduct what his interest fell short of the third of that amount. It was also expressed in the article, that Ezekiel Harrison, Jr. one of the original contracting parties, was to have 600 acres of the military tract, and 400 acres of the head-right lands conveyed to him, for his share, to be laid off by Azari-ah Davis, John Gray and Jesse Harrison; but the particular interest of the other purchasers, is not stated in the agreement. These purchasers failed to make payment, and Edwards commenced a suit at law on the article of agreement, and about the first part of the year 1817, collected the price of the land by execution.
On the 11 th of November, 1817, J olm Clarke, who then resided in Virginia, and had come to this state for the purpose of purchasing a residence, contracted with Azariah Davis, by articles of agreement, to purchase from him 716 acres of the aforesaid head-right lands, and 120 acres of the Rich Grove military survey, at the rate of $>6 50 per acre for all of said land that he should pay for on or before the Christmas of 1818, and $7 per acre for all the land which he should fail to pay for by that time; all to be paid in cash, except a wagr gon and team, to be valued at cash price. Two hundred and eighty-seven acres of the seven hundred and sixteen acres of head-right land, Clarke was to convey back, at his election, to Davis, or to keep it at the same price and instalments, except that for this quantity of 287 acres no commodity or other payment besides money, was to be paid, except two horses of the value of $1.00 each. Notwithstanding the payments and times of payment were agreed upon, yet Clarke was to pay nothing until the title was made, which the said Azari-ah Davis bound himself to cause to be made both by Nm* *342 jan Edwards and himself. So soon as this title was made, Clarke was to pay in money and the waggon and team, thirty-two hundred and fifty-six dollars, or at all events he was to pay that sum by the 25th December 1818. Clarke, in the presence of all the parties, then paid the money to his brother, who resided near the land, when this contract was reduced to writing, with directions to pay it over to Davis, when the title was made, and returned to Virginia, and shortly afterwards removed to, and settled upon the land, where he still resides. At the surveying of the land, which was done before these writings between Clarke and Azariah Davis were entered into, as well as at the executi on of the writings, Jesse Plarrison, John Gray and Ezekiel Harrison, jun. were all present. Afterwards, considerable anxiety appears to have arisen among them, with respect to obtaining the mono}'- deposited in the hands of Joseph Clarke, as agent for John Clarke. On the 22d of December 1817, Azariah-Davis drew an order in fav- or of John Clarke, on Ninian Edwards, requesting him to convey the lands; and on the same day, Ezekiel Harrison, sen. who had acquired, in the mean time, some interest in the lands purchased of Edwards, (hereafter, better explained,) Ezekiel Harrison, jun. Jesse Harrison and John Gray, signed a writing-on the back of said order, to the following effect:
“ We, whose names are hereunder subscribed, do relinquish unto the within named Azariah Davis and John Clarke, all right, title, interest and claim that wc, have to the within described several tracts or parcels of Jand, for value received. Witness our hands and seals, this 22d day of December 1817.
(Signed) EZEKIEL HARRISON, Sen.
JESSE HARRISON,
Witness, EZEKIEL' HARRISON, Jun..
Joseph Clarke. JOHN GRAY.”
This order, with the relinquishment thereon, came to the hands of Joseph Clarke, as agent for John Clarke; and some time near the close of the winter 1817-18, the said Joseph Clarke and John Gray sent a messenger with this order and relinquishment to Ninian Edwards, who resides in the state of Illinois, to obtain from him a conveyance to John Clarke, for the land so sold to him by Azariah Davis; and the messenger returned with the intelligence, that Edwards was on the eve of com ■ *343 ing to Kentucky, to settle this, witb other business, and that the conveyance would then be made. Edwards, as was expected, shortly afterwards arrived; and, before he could meet the parties, or execute any conveyance, or ascertain who was entitled, Azariah Davis sent him a notice not to convey to any person, and directing him wholly to disregard all orders, obligations or bonds given by him, the said Azariah, and not to convey in discharge of any of them. In addition to this, Jesse Harrison filed his bill for a conveyance of a considerable part of the land, against Edwards and others; and Ezekiel Harrison, sen. and Ezekiel Harrison, jun. also filed another bill against him, for another considerable portion of the same land. In this dilemma, Edwards enquired into the nature of the different claims set up under his original contract, and entertaining an opinion that Clarke was entitled'to some share, and being unable, among so many conflicting interests, to discharge his contract by conveying to any qne, he declined conveying, until the respective merits of their claims were tried, and determined to convey to those to whom a court of equity should direct.
John Clarke then filed this bill, which was, after the cause progressed some time, amended. In the original and amendment he sets opt these contracts and circumstances, and alleges that the whole difficulty in procuring the title had arisen from the different sales and contracts of Azariah Davis, who appeared to be insolvent, or nearly so, and the great anxieties that each of the contracting parties showed about the money coming from Clarke, all claiming and wishing to receive it. He also charges in his amendment, i'that both Jesse Harrison, by his bill, as well as Ezekiel Harrison, sen. and Ezekiel Harrison, jun. had obtained their several decrees by default, to which he was no party, against Edwards, to compel him to convey the land, and were attempting to coerce the title. He then requires all these parties, to wit, Ezekiel Harrison, sen. Ezekiel Harrison, jun. Jesse Harrison, Azariah Davis and John Gray, to exhibit their respective titles to land or money, and that he might pay the money to the person properly entitled thereto, and that Edwards might be compelled to convey to him the land he had purchased, or that Edwards might be compelled to convey to Azariah Davis, and Davis, to him. He also prayed for and obtained *344 an injunction, restraining Edwards, or commissioner^ appointed for that purpose, from conveying in discharge of the decrees of Jesse Harrison, or of Ezekiel Harrison, sen. and Ezekiel Harrison, jun. .
Edwards answered, admitting his contract, and the collection of the price of the land by suit; admits that he is willing and anxious to convey, but could not, because of the jarring interests concerned; and offers to convey to the person or persons found to be entitled thereto by the decree of the court. He also propounds interrogatories to the other parties, as a cross bill, to extract the nature of their several claims, and requires the matter to be finally settled.
Ezekiel Harrison, sen. and .Ezekiel Harrison, jun. answered, the former denying any knowledge of Edwards’ contract, at its date, and alleging that he had become interested since; by purchase from Azariah Davis, previous to that of Clarke, by which he bought 500 acres of the head-right land, and 85 acres of the military, no part of which interfered with the subsequent purchase of Clarke, except the 85 acres of military land did so interfere. The latter also denied that his claim, which appears-to have arisen under the original contract with Edwards, and for which he had obtained his decree, interfered in any manner with the purchase of Clarke, and avers that there is no reason for enjoining his decree.
John Gray answered, and admitted the right of Clarke, the complainant, to the land purchased by him, and acknowledged that the only difficulty in the road of Clarke’s getting the title, was the claims of the different parties to the purchase money; and he, in pursuance of the requisitions of the bill and other pleadings, states his claim to the money, by alleging that when he signed the relinquishment on the order in favor of John Clarke, on Ninian Edwards, drawn by Azariah Davis for the title, it was agreed between Davis and himself, that he should have the purchase money; and in pursuance thereof, Davis drew an order on Joseph Clarke, the agent of John, for $>1,000 of the purchase money, and some time afterwards drew a second order for all that should be coming from Clarke to Davis; both of which orders Joseph Clarke, as the agent of John, accepted, to be paid when the contract was complied with, by conveying the land. And he exhibits those *345 orders as part of his answer, and shows, by a credit upon the last order, that he had received from said Joseph Clarke, at one time $105, and at another, some other sums-, in part discharge thereof. He further alleges, that he paid for the land, in discharge of the judgment and execution of Edwards against all the partners, the sum of $3,554, as per four receipts of the sheriff', which he exhibits as part of his answer. He also charges, that in addition to the sum so paid by those receipts, Azariah Davis was largely indebted to’'■him, when he drew the orders on Joseph Clarke, on other accounts, for money he had paid as security for said Azariah Davis, and which he was then bound to pay. These orders he avers to be fair, and prays that the purchase money may be decreed to him in discharge thereof.
Jesse Harrison also answered, and in response to those charges in the bill, which charge him with being present, assenting to, and encouraging the sale from Azariah Davis to John Clarke, although he does not deny being present, yet he denies assenting to, or encouraging the contract; and avers that he apprised Clarke of his danger, unless he got the purchase money, or Clarke bought of him, at the time; and avers he never did assent to it on any other conditions. As to the relinquishment on the order for the title on Edwards, in favor of Clarke, he admits he signed it, and declares that it was written in consequence of some unexplained compromise between himself, and Davis, and. all the parties concerned, by which he was to receive the purchase money of Clarke; that after he and some of the rest had signed the relinquishment on the order, he was to keep it in his own possession, until the proposed arrangement or compromise was completed, which was never done; that Davis applied to him for a sight of the order, some time afterwards, and he gave it to him, and Davis walked off with it, contrary to his ex-f ress directions and orders, promising to return it in wo hours, but left it with Joseph Clarke, the agent of John, without his consent; and that he, Jesse Harrison, shortly afterwards applied to Joseph Clarke, the agent, for the purpose of getting the order, which he did not obtain, and apprised him of the fraudulent manner in which Davis had obtained it, and warned Joseph Clarke not to make use of it. He alleges that he was *346 to have 500 acres of the land; that he had paid the greater part of the debt to Edwards, and other large sums of money, for Davis, as his security and by way of loan, for part of which, Davis had mortgaged 500 acres more of the land; and that on this, as well as his decree, his claim to the land and money was founded. He insists that Clarke never tendered the money and requested a deed, and therefore he is not entitled to a specific periormance of his contract.
Azariah Davis also answered the bill; but it is difficult to abridge or give an epitome of it, and itwould be still more so, to give it at length. It is to be regretted, that the correcting hand of a master, which, in this country, where no master exists, must be applied by the court of original jurisdiction, had not been exercised upon this singular production, covering near fifty pages of a closely written record, and containing a far-'•r^igo of nonsense, blended with some argumentative matter, and numerous frauds confessed without ablush, and justified without compunction or remorse. The rules of justice required that it should have been cleansed from so much impertinent matter and reduced to a smaller compass; hut such as it is, we must now take it, so far as it can have any bearing upon the contest. Extracting from it as much as we are able, he admits the contracts with Edwards, and his own contract with the complainant, Clarke. He avers that he was the sole purchaser from Edwards, and that the rest of the contracting parties were only his sureties to Edwards; and that the contract was written as it Is, recognizing an interest in them as joint purchasers, for the bare purpose of indemnifying them against the purchase money, except the 1,000 acres which Ezekiel Harrison, jun. was to have, which was in consequence of a previous contract between him and said Ezekiel, whereby said Ezekiel was to pay him a greater price for the said 1,000 acres. He admits that he sold 585 acres more to Ezekiel Harrison, senior and junior, before he sold to Clarke; their right to which he contests. He states that Jesse Harrison was, by a subsequent agreement with him, hut before that of Clarke, to have 500 acres of the head-right lands; and that Jesse paid one fourth of the purchase money to Edwards, and was indemnified in that payment by the bond of John Gray, executed at his procurement, from said Gray to Jesse *347 Harrison, for the amount, on which said Jesse bad recovered a judgment since; and that he had settled with said Jesse since,, and given his bond or note, and made some partial payments in discharge thereqf; in full of all tiie demands of said Jesse against said lands and other claims, and that said Jesse had executed to him a relinquishment of all his interest in the purchase from Edwards, wherebyall the interest of said Jesse was completely extinguished, and he now has no more claim to any part of the land purchased from Edwards, than he has to the Rock of Gibralter or the Cape of Good Hope. This relinquishment of the said Jesse, given to him, he avers he has assigned for a valuable consideration, to his brother, David Davis, who is réally now, in justice, entitled to the share of said Jesse; that this assignment to his brother was made previous to his sale to Clarke', and notwithstanding this, he .made the sale to Clarke without his brother’s knowledge,1 relying on his brother’s clemency, and believing.his brother would confirm the sale to Clarke, on receiving the purchase money. As to 'Gray, he admits he was bound’ for him in large sums as his security in replevin bonds, and had paid much, and that he had indemnified Qrdy for these payments, by putting property into his hands; that Gray had paid a large proportion of the debt due to Edwards for the lands so purchased; but alleges that the most of it was out of his own money, and funds with, which he had furnished said Gray. He admits that he-drew the two orders on Joseph Clarke, the agent of John, the complainant, in favor of Gray, which Jo-* seph Clarke accepted; hut contends they are not right and just. He then enters into a long detail of charges against Edwards and some of the other parties, which it is wholly unnecessary to notice..
The court below, on hearing, decreed that Edwards should convey to Azariah Davis,, according to his contract, and that Davis should convey to Clarke, the complainant, with such warranty as his contract called for.; and that on the execution of such deeds, Clarke should pay the money to Azariah Davis for the land, and that, the complainant should recover his costs of the defendants generally. Davis, on the rendition of this decree, came into court, and by order of record, directed the money which he was to receive, to he paid in parcels to several different persons not parties to the suit. From *348 Ibis decree Jesse Harrison has appealed to this court; and it is now agreed, that any party thinking himself aggrieved, may assign errors. Jesse Harrison has assigned errors, contending that the whole decree is erroneous, in giving relief to Clarke; and that if relief is to be given, and the land is to be taken from him, the purchase money, or a proportion of it, ought to be decreed to him. Gray has assigned for error, that the decree is erroneous, in not directing Clarke to pay the purchase money to him.
Edwards seems willing and anxious to effectuate his contract, and in declining to do so at the moment he did, he has done no more than any prudent gaan would have done, who found his contract divided by so many sales and transfers, into the hands of so many claimants^ each anxious to have their share, and more than their share. All lie insists upon, is, that the title should go. to the correct claimant, by the decree of the chancellor. Of course, there can be no objection to the decree for effectuating the contract between him and, Davis, Gray, Jesse and Ezekiel Harrison, jun.
Clarke appears not to have been in default, with rc-ga'Al to his contract with Azariah Davis,' He was not to pay, until the title vVas made. He deposited the money with his brother, as a resident here, in the presence of the parties, to be paid when the title was made. To pay the money, his brother never refused, and indeed paid part to the order of Azariah Davis, in favor of Gray, when not required by the contract, and before the title was conveyed. This money being known to he where it was, appears to have caused all the difficulty, by operating upon the anxieties of the parties concerned, who were all more willing to handle il, than to comply with the contract. As to the contract, then, between Clarke and Azariah Davis, there appears to he no ground to cavil at relief to Cfarke, because of a y failure on his part; and the decree, on this ground, ca mot be impeached.
The next inquiry is, can the relief to Clarke he resisted, on account of the transfers previous!)'made by Azariah Davis? The first we shall notice, is the transfer to David Davis, spoken of in the answer of Azariah. This is not filed or exhibited, although Azariah makes itparfof his answer. David Davis is no party, nor do we conceive that the complainant was bound, to make *349 'him so. The statement comes from Azariah, a defendant, and the writing is not produced. It is true, that Edwards, in bis deposition, proves the existence of such a paper; but does not speak of its date, or show it to be genuine, although he states that he had beard .thát it was prior in date to Clarke’s purchase; and he details sundry matters unfavorable to the fairness, as well, as the genuineness of such assignment by Azariah Davis to his brother.' This objection can, then, cat no figure against the relief sought by Clarke.'
'íhe n'ext claim is that of Ezekiel Harrison, jun. which was 1,000 acres in the original contract. It appears that Edwards has conveyed in discharge of this, 600 acres of the military, his third having been divided off in severalty to him before this contest arose, and there is no interference or conflict between this claim and the purchase of the complainant, Clarke; of course, this forms no objection to a specific execution of the contract in favor of Clarke.
The sale of 500 acres more of the head-right land, and 85 acres of the military, to Ezekiel Harrison, sen. and Ezekiel Harrison, jun. is the next claim to be en-quired Into. This is filed, and dated anterior to the purchase of Clarke. On this same instrument is the decree in favor of the said Ezekiel Harrison, sen. and Ezekiel Harrison, jun. founded, which was enjoined by this suit. The interference between the two claims, as decreed in favor of the said Ezekiel, sen. and Ezekiel, jun. is denied by them, except as to the 85 acres of military land, Between that 85 acres and the 120 acres of the military land which Clarke was to receive, it seems there is a real interference to the amount of 14 acres; for the military, of which Edwards sold one third, was found, on actual survey, to, contain 2,313 acres only, instead of 2,365, its nominal quantity. Of course, the quantity assigned to Edwards for his one third in the division, was 771 acres. 600 acres of this quantity belonged, and was conveyed to Ezekiel |ipr-rison, jun. pursuant to the original contract with Edwards; leaving 171 acres only, to satisfy the 120 acres sold to Clarke, and the 85 sold to Ezekiel Harrison, sen. and Ezekiel, jun. by the contract between Davis and them. The question, then, is, whose claim is to, be abated by thfs quantity; that of Clarke, or that of the *350 two Harrisons, Ezekiel senior and junior, who hold the prior purchase?
There is no principle of^ settled, than that a bystander, by purohaserto enter into a contract with cMesTim-6" self from set- . of ^ his own, against the same estaír‘''' ante page 52. ’
*350 It is stated by a bill of exceptions taken to the opinion of the court below, that the contract between Davis and the complainant, Clarke, was “ excluded as evidence against the defendants, the Harrisons.” We have not thought it necessary to enquire whether this exclusion of that contract was proper, as to the two defendants, Ezekiel Harrison, sen. and Ezekiel Harrison, jun. because the contract between them and Davis, expresses that the land which they purchased was to come from Edwards, and that they were to receive title under him. The order drawn by Davis was on Edwards for the title, expressed 220 acres of the military-land, 100 more than is decreed to Clarke, and-on the back of this order is written the' relinquishment of the said Ezekiel Harrison, sen. and Ezekiel Harrison, jun. to Clarke and Azariah Davis, and it expresses value received. Whatever objections are made to the effect of this order by Jesse Harrison, none such are made by his co-defendants, Ezekiel senior and Ezekiel junior. On them it must be obligatory; and it shows that Clarke is entitled, through Edwards and Davis, to at least as much as he claims of the military survey, and that the court below did right in decreeing to him the whole Í2Q acres, leaving the said Ezekiel Elarrison, sen. and Ezekiel Elarrison, jun. to take the residue only; for the order itself was a sufficient warrant, as to said decree. And as to this 14 acres, Ezekiel Harrison, sen. and Ezekiel junior, were properly made defendants, and their decree against Edwards, as to that quantity,was properly enjoined by the decree of the court below, of course, the claims of Ezekiel Harrison, sen. and. Ezekiel j un. furnished no objection to the decree.
1. The claim set up by Jesse Harrison, presents tbe-next inquiry. His claim to the land rests upon the original contract, by which, upon its face, he would be. entitled to one third, after the 1,000 acres secured tq Ezekiel Harrison, jun. were deducted. The contract executed by Davis to Ezekiel Harrison, sen. and-Eze-Harrison, jun. prior in date to that of Clarke with-Davis, recognizes his right to 500 acres. If the claim-rested still on this base, there could be but little diffi-culty in decreeing to him a portion of the land, if it should appear, upon inquiry, that he had paid a pro. *351 portion of the purchase money. But this evidence is prior in date to Clarice’s purchase; and without relying upon the relinquishment executed by him in favor of Clarke, on the order of Davis, it is clearly made appear in proof, that he was present at the negotiations between Clarke and Azariah Davis; that before the contract was closed, a survey was agreed upon, and he appeared on the ground, with mathematical instruments to execute the survey; but when Clarke objected, ,and required the county surveyor to execute the work, another day was appointed, when the county surveyor attended, and the surveying required to give the land to be sold to Clarke its appropriate figure, wag done; the parties then convened at some convenient house, where the writings were drawn and executed, between Davis and Clarke. During all these times Jesse-Harrison attended; and so far was he from discouraging the contract, or warning Clarke of his danger, unless he, Clarke, purchased of him, Jesse; or unless he, Jesse, received the purchase money, as he alleges in his answer, he encouraged the sale, both by words and deeds, and never showed any dissatisfaction, until Clarke deposited the money with his brother, instead of paying it to Davis. Under such circumstances, he ought to be precluded from asserting his claim against Clarke, forever thereafter; for there is no principle of equity better settled, than that when a by-stander induces a purchaser to enter into a contract with another, he must be barred from setting up a prior claim of his own against the same estate, to the prejudice of him who has been thus fraudulently induced to enter into the contract. Indeed, courts of equity have gone so far as to compel the holder of a legal estate to surrender it in favor of a purchaser of the same estate from another, deluded into the contract by the holder of the estate. Such are the principles which guided this court at the present term, in the case of Morrison vs. Bobb's heirs and Springle. We should view the claim of Jesse Harri-ion in this unfavorable light, without the order and relinquishment before mentioned; but with the order, the case is still more strong. He has failed to prove that the order was taken from him clandestinely, as he alleges in his answer. The weight of evidence on this point is against him, and it is shown that he flattered Clarke with such an order, before the contract between
not evidence th ™St an°" The admis; sion of one defendant is
Where the' execution of &d ananswer in chancery, but the ad-coupled Swith an allegation that it was fraud or witih-out consideration, this allegation being affirmative and in avoidance, must be proved.
*352 Clarke and Davis was closed. Under such circumstances, he can have no right to the land, and his claim presents no bar to the relief of Clarke ,• and his conduct must be construed into a complete authority to Clarke to buy, and Davis to sell and receive the money.
2. His next claim is a share of the purchase money; To claim this, hé has shown no express authority from Davis. He has failed- to show that he has paid money for, and lent money' to Davis, as alleged in his answer, or Pa^ Edwards any share of the purchase money. All the evidence in his favor on this point, is derived from the answer of Davis, who admits he paid one fourth.t This admission of Davis cannot operate against others concerned; nor, indeed, can it operate strongly against Davis himself; for it is coupled with the declaration, that the amount so paid was secured by the bond of Gray, and that bond, or a judgment founded upon it, extinguished by Davis himself; so that Jesse Harrison can have no right to the purchase money. Besides, there is proof that he has relinquished all his claim to Davis.
The claim of Gray alone remains to be examined. This is for the money exclusively, and not the land, which Gray surrenders in favor of Clarke. This contest is now exclusively between Gray and Davis; for we have seen that the others have no title; and if the complainant, Clarke, can have, any interest in this question, it must be in favor of Gray, to whom his agent has already paid part of the demand. Besides, on the trial the plaintiff offered parol evidence to prove exhibits showing Gray’s right to the money, which was rejected by the court, which conduces to show that the question remains between Gray and Davis.
3. On the trial, the court excluded as evidence all the exhibits of the answer of Gray, as evidence against, any party; because, as is supposed, the depositions to Prove these exhibits were set aside for want of notice, Gray moved for a re-hearing, on an affidavit stating that there was a notice to take these depositions filed with the papers, width had been either purloined or lost, and was not discovered to be absent, until the trial Was nearly over, The court overruled this motion, and Gray excepted,
” e have not thought it necessary to investigate the propriety' of the decision overruling this motion; for *353 \v$ can perceive no propriety in excluding the orders "drawn by Davis on Joseph Clarke, in favor of Gray, as evidence against Davis; for he had expressly admitted their execution in his answer, and that admission, in tíiis cause, where the parties were interpleading for the money, rendered further proof of their genuineness wholly unnecessary, as to Davis. It is trae, Davis tries to avoid their effect, by impeaching their consideration’. But as this was affirmative malí or, and the burthen of proof as to that lay upon him, and lie lias failed to make any, the orders are conclusive against him, that G raj', and not-hinrsclf, is entitled to the purchase money due from Clarke. As the decree must, foY this cause, be reversed^ we proceed to notice one or two other inaccuracies which now present themselves. We discover no propriety in a general decree for costs against all of the defendants.
Where, by-contract, one man agrees to give, and another to take, $6 50 por aero, fot all the land which shall bo paid for before a particular day, and $7 for all that shall bo paid for af( cowards, but none to bo paid for nr - til the conveyance should bo mude; cir-onuist oc" intervened, without any default in the purchaser, which prevented a convoy anoe from ho ins: made for several years,after the.diíy named : 'Held, that the pur - eniiModuf tin-whole of tin'land at •íüi i!®1' inn-rest1 or°U costs.
*353 4. Edwards fiad certainly done nothing to subject him to costs in favor of Clarke. Bradshaw, a party not hitherto mentioned, was made a defendant, because he was a commissioner to execute the decree of Ezekiel Harrison, sen. and Ezekiel Harrison, jan. and also because he held a piece of adjoining land, which Davis had sold to Clarke,' but which Edwards had never sold to Davis, but to Elisha Edwards, the vender of Bradshaw, and which Clarke, before tile trial, rightly abandoned, by dismissing his bill as to that claim. He, therefore, ought to be excused from costs. Owing to the expunging from the bill the claim held by Bradshaw, Clarke obtained a smaller portion of land than his original contract called for, which was 836 acres; and of this he was allowed to relinquish hack to Davis 287 acres, which would have left him 549. It happens that this part which Clarke might or might not keep, at his election, was the very claim of Bradshaw, which Edwards had" not sold to Davis, which was 289 acres; which, deducted from Clarke's quantity, left him 547 acres — a small portion less than the certain part he was to hold by his contract. The decree of the court below, as -to the land to be conveyed, is, therefore, correct; but it is vague and indefinite as to the sum to be paid, and does not determine it, and has left open to Ynuch controversy, the price of the land. .
5. It is to be remembered, that if Clarke-paid-for the land before Christina's* 1818, ho was to havéVit at the *354 rate of six dollars and fifty cents; if after that time, at the rate of seven dollars. He paid for none of it before that period, as he was not to pay unless the conveyance was made. The question, then, presents itself, at what price is he now to pay? As he was bound to Pay nf)thing until the title was made, and the default in this respect was entirely the act of the opposite side, we conceive that he is now entitled to the whole which he has- obtainéd, at the rate of $6 50 per acre, without interest, amounting in the whole to $3,552 50, deducting therefrom what his agent has already paid to Gray, as credited on the article.
A decree of commas to costs,corrected-
The decree, then, ought to be as heretofore rendered, with regard to the conveyance of the land, as to boundaries and quantity, on a day given the parties for each conveyance to be made; and afterwards its execution may be enforced, either by an attachment or a commissioner appointed, if the parties shall fail to
obey the decree; and Clarke, the complainant, must be decreed to pay to Gray the balance of the purchase money, after deducting the credits on the article endorsed, when the conveyances are made; which payment the court can enforce by decretal orders, after it shall appear satisfactorily that the conveyances are made and the payment refused; and costs ought to be given against the defendants, except Edwards, Bradshaw and Gray, in the court below.
The decree must, therefore, be reversed, and directions given to render such decree in the court below, as may be conformable to this opinion.
Jesse Harrison and Azariah Davis must pay the costs in this court, in favor of Clarke and Gray, by separate decrees, to wit, Clarke must recover bis costs of said Jesse Harrison and Davis, and Gray likewise his costs.